Argued and submitted January 5, affirmed August 29, 2001

## CROSSROADS PLAZA, LLC.,
*Appellant,*

*v.*

## Izzy OREN
and Roman Lozovsky,
dba Grandma's Bagels and Deli,
*Respondents.*

### 98CV0445ST; A108483

31 P3d 508

Martin E. Hansen argued the cause for appellant. With him on the briefs were William F. Buchanan, and Karnopp, Petersen, Noteboom, Hansen, Arnett & Sayeg, LLP.

Gerald A. Martin argued the cause for respondents. With him on the brief was Francis & Martin.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff is the developer of Crossroads Plaza, a shopping center in Bend, Oregon. It appeals from a judgment in favor of defendants, lessees of the center, in an action for breach of the parties' lease. The trial court held that the lease permitted defendants to cancel it when the shopping center failed to reach 40 percent occupancy for 90 consecutive days after its opening. We affirm.

The facts are not in dispute. Before Crossroads Plaza opened, defendants executed a lease for space to operate a delicatessen in it. The lease contained the following provision:

> "Tenant shall have the right to terminate this Lease in the event occupancy in Crossroads Plaza falls beneath forty (40) percent of the leasable ground floor area for more than ninety (90) consecutive days."

The provision was common in leases for Crossroads Plaza; plaintiff originally included it at the request of a prospective tenant who ultimately decided not to lease any space. Plaintiff and defendants never discussed the provision during the negotiation of the lease. In the summer of 1997, plaintiff's leasing agent placed a sign on the property, after the parties had executed the lease, stating that the premises were 55 percent leased. According to plaintiff's principal, the sign was based on "letters of intent, letters of interest, space that's already been discussed or attempted to be spoken for" as well as space for which plaintiff had a signed lease from a tenant. In fact, Crossroads Plaza was not 40 percent leased until December 1998.

Defendants moved into the center and began business in December 1997. The business was not profitable, and on April 6, 1998, defendants notified plaintiff that they were terminating the lease, relying on the provision in dispute. Plaintiff denied that the provision permitted defendants to terminate the lease and filed this action for damages for breach of the lease. Both parties moved for summary judgment. Plaintiff argued that the provision unambiguously required occupancy in the center to rise above 40 percent before it could "fall[] beneath" that level. Because it had not

risen that high when defendants sought to terminate the lease, defendants had no authority to take that action. Defendants argued that the provision either unambiguously refers to any period of 90 consecutive days below 40 percent occupancy or that it was at least ambiguous. If the lease was ambiguous, then the court had to construe it in favor of defendants, the parties in whose favor the provision was made. *See* ORS 42.260.[1] The court granted defendants' motion and denied plaintiff's.

There are at least two possible purposes for a provision such as that involved in this case; nothing in the record suggests that one of those purposes is more likely than the other. On the one hand, the parties negotiating a lease in a new shopping center might agree to give the lessee a way out of the lease if the center never reaches a certain level of occupancy or fails to maintain it. That provision would protect the lessee but could place the center at risk if it did not obtain leases as quickly as the provision required. On the other hand, the parties might recognize that it will take some time after the center opens for it to be leased to an acceptable occupancy level and might agree to give the lessee an escape only if the center is unable to sustain that level after having reached it. That gives the lessee some relief while reducing the risk to the center. Which approach to adopt is a matter for the parties to decide; all that we can do is to look at the words that they used in order to determine which option they chose.

We conclude that the disputed provision is ambiguous and, hence, that the court properly construed it in favor of defendants and granted their motion for summary judgment. The provision is ambiguous because the 40 percent occupancy level to which it refers can refer to an actual occupancy level or to both actual and projected occupancy levels. If the parties intended it to refer only to an actual occupancy level, then the provision would not apply until the shopping center first reached that level, because occupancy could not fall beneath that level without first reaching it. If, however, the

---

[1] ORS 42.260 provides, as relevant:

"When different constructions of a [contractual] provision are otherwise equally proper, that construction is to be taken which is most favorable to the party in whose favor the provision was made."

parties intended the 40 percent occupancy level to refer to a projected level as well, then the provision would apply from the inception of defendants' occupancy, because occupancy can fall beneath a projected level by never reaching it.

Because the provision is ambiguous and there is no evidence that bears on the ambiguity, it must be construed in favor of defendants, the parties in "whose favor the provision was made." ORS 42.260. Consequently, the trial court did not err in construing the provision as it did and in granting defendants' motion for summary judgment.

Affirmed.